IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANTWAUN BUSH, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 16-926 |
| v. | ) | Judge Cathy Bissoon |
| THE CITY OF PITTSBURGH, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Pending before the Court is a Motion for Summary Judgment (Doc. 94) filed by Defendants The City of Pittsburgh (the "City"), Nathan Harper ("Harper") and several City Police Officers (the "Officer Defendants"): Officer Donald Snider ("Snider"), Officer Daniel Joseph Paga, Jr. ("Paga"), Officer Charles Thomas ("Thomas"), Officer Morgan Jenkins ("Jenkins"), Officer Charles Henderson ("Henderson"), and Officer David Cannon ("Cannon"). For the reasons stated below, Defendants' Motion for Summary Judgment will be granted.

## BACKGROUND[1]

On February 15, 2012, around 11:00 p.m., a woman called 911 to report a domestic violence incident at an address in Pittsburgh, Pennsylvania. (Def.'s Facts ¶ 1; Pl.'s Responsive Facts ¶ 1.) About ten minutes later, a second 911 caller reported that a black man wearing a fur hat and blue jeans was waving a gun around outside. (Def.'s Facts ¶ 2; Pl.'s Responsive Facts ¶

---

[1] Defendants have filed a "Concise Statement of Material Facts" (hereinafter "Def.'s Facts," Doc. 96), to which Plaintiff has responded with a "Responsive Concise Statement of Material Facts" (hereinafter "Pl.'s Responsive Facts, Doc. 103) that admits, disputes, or clarifies Plaintiff's position on each paragraph of Def.'s Facts. Plaintiff has also filed a "Concise Statement of Material Facts in Opposition" (hereinafter "Pl.'s Opposing Facts," Doc. 105) that sets forth Plaintiff's counternarrative of the relevant events. The following facts are undisputed, unless otherwise noted.

2.) Officer Snider was dispatched to the address given in the first 911 call. (Def.'s Facts ¶ 3; Pl.'s Responsive Facts ¶ 3.) Upon arrival, Snider exited his vehicle, drew his weapon, and saw Plaintiff, who matched the description given by dispatch. (Def.'s Facts ¶ 5; Pl.'s Responsive Facts ¶ 5.) Before Snider gave any commands to Plaintiff, an unidentified woman yelled to Snider "that's him" and pointed to Plaintiff. (Def.'s Facts ¶ 6; Pl.'s Responsive Facts ¶ 6.)

Plaintiff saw Snider with his gun drawn and ran away—Snider then chased Plaintiff for a distance of about 300 yards, while commanding Plaintiff to "stop" and get on the ground, and while informing Plaintiff that he was under arrest. (Def.'s Facts ¶¶ 7-9, 12; Pl.'s Responsive Facts ¶¶ 7-9, 12.) Defendants allege that Snider saw Plaintiff remove a firearm from his waistband during the chase; Plaintiff disputes this fact, and notes that Snider testified that no gun was ever found. (Def.'s Facts ¶ 11; Pl.'s Responsive Facts ¶ 11; Pl.'s Opposing Facts ¶ 26.) Snider fired his TASER at Plaintiff, but only one prong made contact and the TASER had no effect. (Def.'s Facts ¶¶ 13-15; Pl.'s Responsive Facts ¶¶ 13-15.) Plaintiff escaped Snider's view and Snider requested that responding units establish a perimeter to search for Plaintiff. (Def.'s Facts ¶ 16; Pl.'s Responsive Facts ¶ 16.) Officer Paga responded with his canine service dog, Mixo. (Def.'s Facts ¶ 17; Pl.'s Responsive Facts ¶ 17.)

Mixo located Plaintiff, who was confined in a narrow, fenced-in backyard area, lying on the ground. (Def.'s Facts ¶¶ 18, 23; Pl.'s Responsive Facts ¶ 18.) Paga shined his flashlight into the enclosure and saw a man fitting Plaintiff's description. (Def.'s Facts ¶ 23; Pl.'s Responsive Facts ¶ 23.) Plaintiff testified in his deposition that he remained lying still on his abdomen, with his hands outstretched in front of him, anticipating that he would be arrested. (Pl.'s Responsive Facts ¶ 22.) A Supplemental Police Report, prepared by Paga and Snider the day after the incident, indicates that Plaintiff's hands were tucked under his chest at this time and that Plaintiff

failed to comply with repeated orders to show his hands. (Def.'s Facts ¶¶ 23, 25-26.) Sergeant Henderson, who had also arrived at the scene, provided "lethal coverage" while Paga lifted Mixo over the fence and into the enclosure. (Def.'s Facts ¶ 29; Pl.'s Responsive Facts ¶ 29.) Paga commanded Mixo to bite Plaintiff in the lower left leg. (Def.'s Facts ¶ 32-33; Pl.'s Responsive Facts ¶ 32-33.)[2]

The parties' accounts diverge sharply at this point. Defendants state that Plaintiff continued to resist by failing to show his hands; that Paga entered the fenced-in area and removed Plaintiff's arms from underneath him once Mixo had successfully "neutralized" Plaintiff; and that Officer Thomas, who followed Paga into the enclosure, handcuffed Plaintiff while Paga called off Mixo. (Def.'s Facts ¶ 32-34.)

Plaintiff states that he never resisted arrest; that Defendants repeatedly demanded that he produce a firearm while Mixo was pulling and tugging him through the enclosure; that Defendants continued to allow Mixo to attack and maul his leg; that they told Plaintiff "all you little Homewood nigger gangsters run around with these guns, tell us where the gun is"; and that they stomped on him until he was handcuffed. (Pl.'s Responsive Facts ¶¶ 33-34.) Plaintiff also states that, after handcuffing him, Defendants began punching him in the ribs and face while holding him against a nearby garage until he fell down; and that Defendants then picked him up by the handcuffs, flipped him over a fence, dragged him by his handcuffs, and left him with his pants down and genitals exposed, bleeding profusely, while Mixo barked in his face and

---

[2] Defendants state that Mixo "barked and guarded" Plaintiff prior to engaging him, but Plaintiff disputes this fact.

3

Defendants jeered at him, until emergency medical services arrived. (Pl.'s Opposing Facts ¶¶ 65-69.)[3]

Plaintiff commenced an action in Pennsylvania state court against the named Defendants on January 30, 2014 by filing a Praecipe for Writ of Summons. (Exhibit K to Def.'s Facts Appendix, Doc. 97-16.) Plaintiff commenced the instant action in this Court on June 22, 2016. (Complaint, Doc. 1.)

**ANALYSIS**[4]

Plaintiff's Amended Complaint (Doc. 21) contains eight counts: (1) a 42 U.S.C. § 1983 substantive due process claim against the Officer Defendants for excessive use of force; (2) a 42 U.S.C. § 1983 claim against the City and Nathan Harper, Pittsburgh's Chief of Police at the relevant time, for failure to train and supervise the City's police officers with respect to the use of police canines; (3) a 42 U.S.C. § 1983 claim against Officers Thomas, Jenkins, Henderson, and Cannon for failure to intervene to prevent the use of excessive force; (4) a Civil Rights Act claim against the Officer Defendants for a race-based conspiracy to violate Plaintiff's civil rights; (5) a Pennsylvania negligence claim against the Officer Defendants; (6) a Pennsylvania battery claim against the Officer Defendants; (7) a Pennsylvania assault claim against the Officer

---

[3] Plaintiff's injuries included a torn ACL, MCL, PCL and LCL as well as a dislocated shoulder, severe nerve damage, tissue damage, and bruising on his face and ribs. (Id. at ¶¶ 70-71.)
[4] Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. See Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 172 (3d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on the pending motion for summary judgment, the Court must view the facts, and any reasonable inferences arising therefrom, in the light most favorable to the non-moving party. See Moody v. Atlantic City Bd. of Educ., 2017 WL 3881957, at *1 n.1 (3d Cir. Sept. 6, 2017) (citing Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005)).

Defendants; and (8) a Pennsylvania intentional infliction of emotional distress claim against the Officer Defendants. (Amended Complaint ¶¶ 50-100.)

Defendants move for summary judgment on several grounds, including that the applicable two-year statute of limitations bars this action, as Plaintiff's state court action, which was not removed to federal court, did not toll the statute as to the instant action.[5] (Defendants' Brief in Support of their Motion for Summary Judgment, hereinafter, "Def.'s SJM Brief," 5-8, Doc. 95.) As the Court concludes that this action is barred by the applicable statute of limitations, the Court will analyze the parties' respective arguments concerning this issue and need not address the remaining grounds for summary judgment in Defendants' motion.

**Statute of Limitations**

The statute of limitations for personal injury torts in the state where a cause of action arose determines the length of the limitations period for a claim under 42 U.S.C. § 1983. Wallace v. Kato, 549 U.S. 384, 387 (2007). Pennsylvania sets a two-year limitations period for personal injury torts. 42 Pa. C.S. § 5524; see also Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). The accrual date for a claim under 42 U.S.C. § 1983, set by federal law, is the date on which "plaintiff has a complete and present cause of action" such that "plaintiff can file suit and obtain relief." Wallace, 549 U.S. at 388 (internal citations and quotation marks omitted). "State law governs the question [of] whether an applicable state statute of limitations is tolled in an

---

[5] The remaining grounds are: the Fourth Amendment entirely subsumes Plaintiff's Fourteenth Amendment substantive due process claim; as to the claims against the City and Harper, Plaintiff's evidence is insufficient to establish each element of a municipal liability claim; qualified immunity shields all Defendants from liability for excessive force; Plaintiff's evidence is insufficient to establish a claim for failure to intervene; Plaintiff's evidence is insufficient to establish a conspiracy to violate Plaintiff's constitutional rights; and to the extent that Plaintiff's several Pennsylvania law tort claims are not barred under the Pennsylvania Subdivision Tort Claims Act, Plaintiff has failed to provide sufficient evidence to establish them. (See generally Def.'s SJM Brief.)

action brought under the federal Civil Rights Act." Ammlung v. City of Chester, 494 F.2d 811, 815 (3d Cir. 1974); accord Humphries v. Houghton, 422 F. App'x 626, 628 n.3 (3d Cir. 2011).

Concerning Pennsylvania law on tolling, Plaintiff argues that filing a praecipe for writ of summons in state court within the two-year limitations period, and then serving all defendants, is sufficient to toll the limitations period indefinitely, satisfying the statute of limitations. (Plaintiff's Brief Opposing Defendants' Motion for Summary Judgment, hereinafter "Pl.'s SJM Brief," 5, Doc. 104.) Plaintiff cites Galbraith v. Gahagen, 204 A.2d 251 (Pa. 1964), for the proposition that "where the plaintiff has had the summons served upon the defendant, and the defendant is thus brought onto the record by proper service and he is thus made aware of the lawsuit pending against him, he cannot complain if the plaintiff takes his time and files the Complaint more than two years after service." Id. at 252. Rather, a served defendant seeking to avoid delay must "employ the weapon given him under [Pennsylvania] Rule [of Civil Procedure] 1037," id., which allows a defendant to file a praecipe that compels a plaintiff to either file a complaint within twenty days or face a judgment of non pros, Pa. R. Civ. P. 1037(a). See Schutz v. Honick, 2012 WL 393501, at *3 (W.D. Pa. Feb. 6, 2012) ("In sum, under Pennsylvania law once the writ of summons is timely served the statute of limitations is satisfied and defendant's only remedy lies in Rule 1037.").

Contrary to Plaintiff's understanding of the applicable tolling rule, Defendants argue that the tolling rule described in Galbraith applies only to a lawsuit initiated by filing a praecipe for writ of summons—not to a separately filed federal lawsuit related to the same events. (Def.'s SJM Brief 8.) In other words, a state court–filed praecipe for writ of summons will toll the statute of limitations for a removed action, but not for an action originally initiated in federal court by a plaintiff. (Id.)

The Court agrees with Defendants. Every federal court applying Pennsylvania law to this question has reached the same conclusion: absent an equitable reason for tolling, filing a praecipe for writ of summons in state court does not toll the statute of limitations for a separate action that a plaintiff initiates later in federal court. E.g., McCreary v. Redevelopment Auth. of City of Erie, 427 F. App'x 211, 215 (3d Cir. 2011) ("[t]he running of a Pennsylvania statute of limitations against a federal cause of action is not tolled under Pennsylvania concepts of tolling by the commencement of a similar suit in state court" (quoting Ammlung, 494 F.2d at 816)); Pettinato v. Allegheny Cty., 2011 WL 2672040, at *7 (W.D. Pa. July 8, 2011) ("tolling based on state court filings (such as a Writ of Summons) is particularly distasteful when a plaintiff is in federal court of his or her own choosing, and not because the case is removed to a federal forum"); Baranowski v. Waters, 2008 WL 728366, at *9 (W.D. Pa. Mar. 18, 2008) ("[T]he commencement of one action does not automatically toll Pennsylvania's two-year statute of limitations for purposes of a later action."), vacated in part on other grounds, 2008 WL 4000406 (W.D. Pa. Aug. 25, 2008), aff'd, 370 F. App'x 318 (3d Cir. 2010); Davis v. Malitzki, 2009 WL 3467770, at *9, *9 n.8 (E.D. Pa. Oct. 27, 2009) ("Plaintiff commenced his federal lawsuit . . . by filing his original Complaint.[] Although Plaintiff's argument that a writ of summons tolls a statute of limitation may generally be correct under Pennsylvania law, there is a fatal flaw as applied to this case because Plaintiff's state court case was *not* removed to this federal court." (footnote combined with preceding text)); see also Stinson v. Kaiser Gypsum Co., Inc., 972 F.2d 59, 62 (3d Cir. 1992) ("While a timely filed complaint or praecipe for writ of summons satisfies the statute of limitations under Pennsylvania law as far as that action is concerned, the Pennsylvania rule as to new actions is the same as the generally accepted rule.").

Plaintiff attempts to distinguish his case from these precedents by arguing that he timely served all Defendants in the state action, placing them on notice of Plaintiff's claims. (Pl.'s SJM Brief 5-6.) However, this distinction is irrelevant to Pennsylvania law on tolling as to a separately filed action. See Pettinato, 2011 WL 2672040, at *7 (the fact that plaintiff had filed and served a writ of summons in state court prior to initiating a separate federal suit does not alter the tolling analysis under state law); cf. Stinson, 972 F.2d at 62 (distinguishing the Pennsylvania tolling rules applicable to separately filed actions from those applicable to a single action).

The parties agree that Plaintiff's cause of action accrued on February 15, 2012. (Pl.'s SJM Brief 7; Def.'s SJM Brief 8.) Plaintiff filed the instant action on June 22, 2016, over four years later. Nothing operated to toll the two-year statute of limitations during that time as to the instant action. Plaintiff's federal claims—as well as his related personal injury tort claims under state law—are barred by the two-year statute of limitations.

Accordingly, Defendants' Motion for Summary Judgment (Doc. 94) is GRANTED. Plaintiff's claims are DISMISSED, with prejudice, as time-barred.

IT IS SO ORDERED.

November 30, 2018                  s/Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via ECF email notification):

All Counsel of Record